## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

AMMAR IDLIBI,                              :        **Civil Action No. 22-1374- JAM.**

    PLAINTIFF,                          :        **JURY TRIAL DEMANDED**

    v.                                         :        **NOVEMBER 1, 2022**

NEW BRITAIN JUDICIAL DISCTRICT,   :

    DEFENDANT.

**JURISDICTIONAL BASIS**

I. Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the

jurisdiction to cases arising under the U.S. Constitution.

II. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1983 for violation of the Due

Process clause of the Fifth Amendment and the Fourteenth Amendment, as well as a violation of

the Equal Protection clause of the Fourteenth Amendment by the Defendant under color of law,

all of which are claims arising under federal law. Accordingly, the Court has jurisdiction in this

case pursuant to 28 U.S.C. § 1331.

**PARTIES**

III.  Plaintiff, Ammar Idlibi, is a natural person residing at 33 Maggie Court. Terryville,

CT 06786.

IV.  Defendant is a Connecticut State Superior Court located at 20 Franklin Sq. New

Britain, CT 06051

**STATEMENT OF CASE**

1- On July 26, 2019, New Britain Judicial District – Superior Court for Juvenile Matters

granted the Plaintiff's three children's ("children') petitions to terminate Plaintiff's

parental rights. The children's attorneys petitioned for Termination of Parental Rights

1

("TPR") because the children spent around three years in foster placement during which they developed fears and misunderstandings of their religion and of Plaintiff according to the court's finding.

2- The Department of Children and Families ("DCF") never petitioned for TPR and opposed it initially, then DCF supported TPR at the commencement of the trial.

3- Plaintiff filed a discrimination lawsuit against DCF alleging in part, that DCF's intentional unnecessary prolongation of the children's foster placement and its supporting of TPR later was motivated by discrimination against Plaintiff. The discrimination included noncompliance with the Court orders. The Court had ordered DCF to provide the children with targeted therapy to address the unfounded fears and misunderstandings of their father (Plaintiff) and of their religion while in foster placement. It was those misunderstandings which prompted the children to petition for TPR.

4- Plaintiff discovered later that the children's attorneys have not been obtaining their clients' positions during the termination proceeding and after the termination proceedings.

5- On August 1, 2019, Plaintiff appealed the termination judgment to the Appellate Court of the State of Connecticut. In his appeal, Plaintiff claimed in part, that no factual bases regarding parental unfitness or failure to rehabilitate have been identified.

6- On May 27, 2020, the Connecticut Appellate Court affirmed judgment without articulating the factual basis for terminating the Appellant's parental rights even though the Plaintiff filed a motion for articulation which was denied and a motion for review which was also denied.

7- Plaintiff thereafter filed a Petition for certification to the Connecticut Supreme Court, which was denied. Plaintiff then filed a petition for certiorari to the US Supreme Court,

which was also denied.

8- On May 25, 2021, Plaintiff filed his Amended Petition for a New Trial with the Defendant Court. Opposing parties filed motions to strike.

9- On July 27, 2021, the Defendant Court issued Its Memorandum of Decision ("MOD"), granting motions to strike Plaintiff's Amended Petition for a New Trial.

10- The MOD was transmitted electronically via e-mail only without verified delivery. No judicial notice was issued nor sent either electrically or otherwise. The Superior Court for Juvenile Matters is the only Court that does **not** participate in e-services.

11- Plaintiff never consented to electronic delivery.

12- Plaintiff never received the e-mail containing the MOD until he contacted the Clerk to inquire about the MOD on September 9, 2021.

13- There is no finding by the Defendant Court that the electronic transmission of the Court's MOD was successful. None of the parties claims that the electronic transmission of the court's MOD was successful.

14- There is no finding by the Defendant Court that the MOD was delivered to the inbox of the Plaintiff. None of the parties claims that the MOD was delivered to the Plaintiff's inbox.

15- Even if hypothetically the electronically transmitted MOD did make it to the Plaintiff's inbox, there is no finding that the Plaintiff opened the electronically transmitted MOD.

16- The Defendant Court does not utilize technical methodology to verify delivery of electronic transmissions.

17- The Defendant Court does not utilize technical methodology to verify whether the electronic transmission was opened by the recipient.

18- On September 9, 2022, the Defendant's Court's clerk, who is the sender of the Court's

MOD, learned that the electronically transmitted MOD did not reach Plaintiff's inbox until September 9, 2022, when the sender sent is to Plaintiff's upon Plaintiff's inquiry.

19- Plaintiff received the service copy of the Court's MOD on September 9, 2021.

20- Without Plaintiff's knowledge and prior to being served with a copy of the MOD, DCF waited the twenty days period (which would have otherwise allowed Plaintiff to either refile his stricken petition or appeal from striking it) and petitioned for the decrees of adoption on behalf of the children to one of foster couple who recently separated from her other female partner.

21- On September 23, 2021, Plaintiff filed his motion to set aside the adoption decrees pursuant to Conn. Gen. Stat. § 52-212a challenging the legality of the adoption proceeding, which took place before the Plaintiff received the electronic transmission of the Court's MOD striking his petition for a new trial. Plaintiff also claimed that the indigent single adoptive mother is unfit to handle the special needs of the children. But more seriously, Plaintiff claimed that the adoption represents imminent irreparable harm to the children.

22- The Defendant Court denied Plaintiff's motion to set aside adoption decrees and denied Plaintiff's request for an evidentiary hearing orally at the end of the hearing on 10/20/21.

23- On 11/2/201, Plaintiff appealed to the Appellate Court. In his brief, the Plaintiff argued that the unverified electronic transmission of the Court's decision without a judicial notice does not meet the requirements of due process.

24- The US Supreme Court has long held that the most basic of due process's customary protections is the demand of fair notice. Connecticut Courts have long held the same.

25- Connecticut Courts have long held that service of process in any circumstance must comport with the due process clause's actual notice requirements.

26- On 7/2/2022, the Connecticut Appellate Court released its opinion reversing the Trial's Court's decision and remanding the case with direction to dismiss the action for lack of standing. The sole basis for the Appellate Court's decision was that Connecticut Practice Book § 7-5 permits the clerk to give notice by '*electronic delivery*'.

27- The Connecticut Appellate Court held that "[the trial court] having correctly determined that, because notice of its ruling regarding his amended petition for a new trial had been sent timely and properly, the [Plaintiff's] parental rights had been adjudicated fully and fairly prior to its issuance of the decrees…"

28- On 7/27/2022, Plaintiff filed his motion for reconsideration en banc. On 9/14/2022, the Connecticut Appellate Court denied Plaintiff's motion for reconsideration en banc.

29- On September 27, 2022, Plaintiff filed his petition for certification to the Connecticut Supreme Court.

30- On October 20, 2022, the Connecticut Supreme Court denied Plaintiff's Petition for Certification.

31- Federal Rule of Civil Procedure 5(B)(2)(E) permits a document to be served by "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing." Service by electronic means "is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served."

32- Rule 5 distinguishes between a hard copy mailing and electronic delivery. See Fed. R. Civ. P. 5(b)(2).

33- Pursuant to Fed. R. Civ. P. 5(b)(2)(E), electronic means alone without personal service is only sufficient if the recipient has consented in writing to such service.

34- There is no Connecticut Statute that permits the unverified electronic transmission alone as a proper method of service of court decisions.

35- Even Connecticut Practice Book § 7-5, which the Appellate Court relied on, uses the word "delivery" in its language. There is no finding of delivery in this case.

36- There is a pending action in District Court at 3:22-cv-00902-JAM, which is intertwined with this case. Plaintiff intends to file a motion to consolidate the two actions.

37- On September 30, 2022, Plaintiff attempted to file his petition/motion with the Defendant Court pursuant to Connecticut General Statutes § 52–592(a) but the Defendant Court rejected Plaintiff's filing because his parental rights have been terminated the children have been adopted.

1- The forgoing constitutes violation of Plaintiff's right to due Process and Equal Protection of the law. Plaintiff did not receive a constitutionally proper notice that meets the requirements of due process.

2- Plaintiff is entitled to declaratory relief to secure his right to refile his stricken petition for a new trial or to appeal from striking it.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court issue equitable relief as follows:

Issue declaratory relief that Plaintiff retains his right to refile his stricken Petition to a New trial pursuant to Connecticut statutes, and accordingly:

a- Reset the law dates for Plaintiff to receive equal protection of the law and refile his stricken petition and;

b- Reset the law dates to set aside the adoption decrees, which were issued prior to Plaintiff's receipt of proper notice of the Court's decision.

Respectfully submitted,

PLAINTIFF,

_____
AMMAR IDLIBI
33 Maggie Court
Terryville, CT 06786
Tel (860)543-54500
Fax: 860-516-8918
E-mail: aidlibi@yahoo.com


## STATEMENT OF VERIFICATION

I have read the above Complaint and it is correct to the best of my knowledge.

PLAINTIFF,

_____
AMMAR IDLIBI

7