## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

AMMAR IDLIBI,
    *Plaintiff*,

    v.

NEW BRITAIN JUDICIAL DISTRICT and
MIDDLESEX JUDICIAL DISTRICT,

    *Defendants*.

No. 3:22-cv-1374 (JAM)

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

The plaintiff has filed this *pro se* lawsuit against the Middlesex Judicial District and the New Britain Judicial District of the Connecticut Superior Court. He alleges that judges of these two judicial districts discriminated against him and violated his rights to due process in connection with various family-related state court proceedings. I will grant the defendants' motion to dismiss on several grounds.

### BACKGROUND

According to the amended complaint, the plaintiff Ammar Idlibi appeared for several years from 2015 to 2022 before judges in both the Middlesex Judicial District and the New Britain Judicial District in a series of child protection hearings involving his former spouse and their three children.[1] On July 26, 2019, Judge Mary-Margaret Burgdorff of the Middlesex Judicial District terminated Idlibi's parental rights.[2] According to Idlibi, the judge ruled against him because of her allegedly deep-rooted animus against Middle Eastern Muslims, and she terminated his parental rights by allegedly fabricating evidence and without evidence that Idlibi was unfit to be a parent.[3]

---

[1] Doc. #12 at 2 (¶¶ 1-2).
[2] *Id.* at 3 (¶ 4).
[3] *Id.* at 4 (¶ 8).

Idlibi appealed Judge Burgdorff's decision but his appeal was denied, allegedly because of a conspiracy between Judge Burgdorff and one of the appellate judges.[4] *See In re O. I.*, 197 Conn. App. 499 (2020), *cert. denied*, 335 Conn. 924 (2020), *cert. denied sub nom. Ammar I. v. Connecticut*, 141 S. Ct. 956 (2020).

Idlibi then filed an amended petition for a new trial in 2021, claiming that the Connecticut Department of Children and Families and Judge Burgdorff had discriminated against him, but this petition was denied on July 27, 2021.[5] I take judicial notice of the trial court decision denying Idlibi's amended petition for a new trial and the fact that it was issued by a different judge—Judge Sheila Huddleston of the Judicial District of New Britain. *See In re Omar I.*, 2021 WL 3727802 (Conn. Super. Ct. 2021).[6]

Due to an error in electronic transmission, Idlibi allegedly did not receive notice of the court's decision until September 9, 2021—about a month and a half after the decision was rendered.[7] He alleges that because of the delay he was not "allowed … to either refile his stricken petition or appeal from striking it" and that in the meantime the Department of Children and Families petitioned for decrees of adoption of his children to a foster couple.[8]

On September 23, 2021, Idlibi filed a motion to set aside the adoption decrees, arguing in part that the adoption proceedings had taken place before he had received notice of the denial of his amended petition for a new trial with respect to the termination of his parental rights.[9] The

---

[4] *Ibid.* (¶¶ 9-11).
[5] *Id.* at 5-8 (¶¶ 13-23).
[6] According to Westlaw, Judge Huddleston's decision denying the amended petition for a new trial was reversed and remanded by the Appellate Court. Yet a review of the Appellate Court decision that is linked by Westlaw discloses that—as discussed in more detail below—the Appellate Court did not review Judge Huddleston's denial of the amended petition for a new trial but instead reviewed a separate decision of the trial court that denied a motion to open and set aside the adoptions of Idlibi's three children. *See In re Omar I.*, 214 Conn. App. 1 (2022) (*per curiam*).
[7] *Id.* at 8 (¶¶ 26-33).
[8] *Id.* at 9 (¶ 34).
[9] *Ibid.* (¶ 35).

trial court denied his motion "orally at the end of the hearing" that took place on October 20, 2021.[10]

Idlibi then appealed this ruling, arguing in part that he had not received proper notice of the denial of his amended petition for a new trial with respect to the termination of his parental rights.[11] The Appellate Court denied relief, and the Connecticut Supreme Court denied Idlibi's petition for certification.[12] I take judicial notice of the Appellate Court's reported decision which reflects that it agreed with the trial court that Idlibi had received proper notice and that Idlibi did not have standing to challenge the adoption decrees, but that the Appellate Court reversed and remanded the trial court's decision solely on the technical ground that the trial court should have dismissed—rather than denied—Idlibi's challenge to the adoption decrees for lack of standing. *See In re Omar I.*, 214 Conn. App. 1, 3-4, *cert. denied*, 345 Conn. 913 (2022).

This federal court action against the two state court judicial districts is related in part to another federal action that Idlibi filed against Judge Burgorff in July 2022, and Idlibi has incorporated his allegations against Judge Burgdorff from that separate lawsuit into the amended complaint in this case.[13] In April 2023, I dismissed the related federal action against Judge Burgdorff, concluding that it was barred by the *Rooker-Feldman* doctrine, the Eleventh Amendment, absolute judicial immunity, and failure to state a plausible claim for relief. *See Idlibi v. Burgdorff*, 2023 WL 3057160 (D. Conn. 2023).

In this case, Idlibi alleges both constitutional and statutory claims against the two judicial district defendants. He alleges constitutional claims pursuant to 42 U.S.C. § 1981 and 42 U.S.C. §

---

[10] *Ibid.* (¶ 36).
[11] *Ibid.* (¶ 37).
[12] *Id.* at 9-10 (¶¶ 40-44).
[13] *Id.* at 2-3 (¶ 3).

1983 for violation of his rights to due process and equal protection.[14]  He further alleges statutory

claims for discrimination pursuant to Title V, Title VI, and Title VII of the Civil Rights Act of

1964.[15]

Idlibi claims that he is "entitled to declaratory relief to secure his right to refile his stricken

petition for a new trial or to appeal from striking it."[16] He seeks monetary damages, as well as a

declaration that his petition for a new trial was legally sufficient.[17]

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts

that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction

as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[18]

"The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Although

allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d

Cir. 2020). "The court must also construe all reasonable inferences that can be drawn from the

complaint in the light most favorable to the plaintiff." *Ibid.*

---

[14] *Id.* at 1.
[15] *Ibid.*
[16] *Id.* at 12 (¶ 57).
[17] *Id.* at 12-13.
[18] Unless otherwise indicated, this ruling for purposes of readability omits internal quotation marks, alterations, citations, and footnotes in any text that it quotes from court decisions.

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Constitutional claims

The defendant judicial districts argue that Idlibi's constitutional claims against them are barred by the Eleventh Amendment. The Eleventh Amendment and related principles of state sovereign immunity generally divest federal courts of authority to grant relief in lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 581 U.S. 155 (2017); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021).[19]

The two judicial district defendants are a part of the Connecticut Judicial Branch, and it is well-established that the Judicial Branch is entitled to claim the protection of the Eleventh Amendment sovereign immunity from federal court proceedings. *See, e.g.*, *Sargent v. Emons*, 582 F. App'x 51, 52 (2d Cir. 2014); *Villano v. Jud. Dep't*, 2019 WL 4933517, at *3 (D. Conn. 2019); *Lynch v. Jud. Branch*, 2019 WL 3716511, at *2 (D. Conn. 2019); *Swinton v. State of Connecticut Jud. Branch*, 2016 WL 4257326, at *2 (D. Conn. 2016); *Skipp v. Connecticut Jud. Branch*, 2015 WL 1401989, at *7 (D. Conn. 2015).

To be sure, a State is not entitled to Eleventh Amendment sovereign immunity if it has waived its immunity or if Congress has abrogated its immunity. *See Virginia Office for Prot. and*

---

[19] The defendants do not argue that they are not entities capable of being sued. *See McLin v. Twenty-First Jud. Dist.*, 2023 WL 5274403, at *3 (5th Cir. 2023) (state judicial district in Louisiana is not an entity that is capable of being sued).

*Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). But Congress's enactment of § 1983 did not abrogate Eleventh Amendment immunity. *See Barone v. Lawyers' Fund for Client Prot.,* 2023 WL 1975783, at *2 (2d Cir. 2023); *Salu v. Miranda*, 830 Fed. App'x 341, 347 (2d Cir. 2020). The Eleventh Amendment similarly precludes a claim under 42 U.S.C. § 1981. *See Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018); *Wang v. Off. of Pro. Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009). Accordingly, because the Eleventh Amendment applies, I will dismiss Idlibi's constitutional claim against the two judicial district defendants.[20]

### *Statutory claims*

As to Idlibi's statutory claims, Title VII of the Civil Rights Act of 1964 protects against discrimination by an employer against an employee on the ground of the employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. A claim under Title VII requires proof that the plaintiff was an employee and subject to discrimination by the plaintiff's employer. *See Felder v. United States Tennis Association*, 27 F.4th 834, 841-42 (2d Cir. 2022). But Idlibi does not allege that he was an employee of the two judicial district defendants. He claims only that he was a litigant in these judicial districts. Accordingly, I will dismiss Idlibi's Title VII claim against the two judicial district defendants.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Idlibi claims that Judge Burgdorff discriminated against him because of his Middle Eastern national origin. But this claim as to

---

[20] The defendants do not claim that they have Eleventh Amendment immunity from Idlibi's statutory claims under the Civil Rights Act of 1964. *See Lopez v. U.S. Dep't of Interior*, 2022 WL 17822516, at *4 (S.D.N.Y. 2022) (no Eleventh Amendment immunity for States from Title VII claims); *Badger v. CUNY Graduate Ctr.*, 2023 WL 35223, at *2 n.1 (S.D.N.Y. 2023) (same for Title VI claims).

Judge Burgdorff is foreclosed by the *Rooker-Feldman* doctrine for all the reasons I set forth in my prior ruling dismissing Idlibi's claims against Judge Burgdorff. *See Idlibi*, 2023 WL 3057160, at \*2.[21]

More generally, Idlibi fails to allege non-conclusory facts to support any claim that he was subject by Judge Burgdorff—or by any other judge or employee of the defendant judicial districts—to discrimination because of his Middle Eastern national origin. "Title VI . . . require[s] that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 Fed. Appx. 552, 555 (2d Cir. 2002); *see also DeSouza v. Kennedy*, 2017 WL 3431393, at \*4 (D. Conn. 2017) (dismissing Title VI claim against state court mediator where "Plaintiff makes the conclusory allegation that Defendant, 'with oppressed racial motives, grossly discriminated against me because of race, skin color, ethnicity and as minority litigant' but provides no factual support for these racial discrimination claims"). Accordingly, I will dismiss Idlibi's Title VI claim against the two judicial district defendants.

Lastly, Title V of the Civil Rights Act of 1964 establishes a commission on civil rights. *See* 42 U.S.C. § 1975. It does not create a private right of action. *See Diaz v. E. Side Union High Sch. Dist.*, 2020 WL 8910888, at \*4 (N.D. Cal. 2020); *MacEntee v. IBM (Int'l Bus. Machines)*, 783 F. Supp. 2d 434, 442 (S.D.N.Y. 2011); *Grajales v. Hutcheson*, 2008 WL 4491939, at \*2 (M.D. Pa. 2008). Accordingly, I will dismiss Idlibi's Title V claim against the two judicial district defendants.

---

[21] As I explained in my prior ruling, the *Rooker-Feldman* doctrine bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). The *Rooker-Feldman* doctrine arguably bars not only Idlibi's challenge to Judge Burgdorff's ruling but also all other rulings that he identifies in his complaint and that appear to have been fully subject to an actual appeal or an opportunity to appeal. In light of the nature of Idlibi's requests for relief that I declare his petition for a new trial to be legally sufficient and that I secure his right to re-file a petition for a new trial or his right to appeal from the denial of a new trial, it is clear that he claims injury from and seeks to challenge the state court rulings. But I need not consider at this time the application of the *Rooker-Feldman* doctrine to other aspects of Idlibi's claims against the defendant judicial districts because these claims fail for other reasons discussed in this ruling.

## CONCLUSION

For the reasons stated above, the Court GRANTS the defendants' motion to dismiss (Doc. #28). The motion to consolidate cases (Doc. #21) is DENIED as moot. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 25th day of September 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge